UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

THE MERCATOR CORPORATION,                    15-cv-02970 (JGK)

              Plaintiff,            OPINION AND ORDER

     - against -

LARS WINDHORST, ET AL.,

              Defendants.

——————————————————————————

JOHN G. KOELTL, District Judge:

The plaintiff, the Mercator Corporation ("Mercator"), sued Lars Windhorst and Sapinda Holding B.V. ("Sapinda Holding") for breach of contract. The defendants now move to dismiss the Amended Complaint on the grounds that the plaintiff failed to sue the proper parties, that the claim is barred by the statute of frauds, and that the Court lacks personal jurisdiction over the defendants. For the reasons explained below, the Amended Complaint is dismissed without prejudice.

I.

The defendants move to dismiss the plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted).

On a motion to dismiss for lack of personal jurisdiction, "'the plaintiff bears the burden of showing that the court has

jurisdiction over the defendant.'" Mende v. Milestone Tech.,
Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting Kernan
v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999).  When
the Court does not hold an evidentiary hearing and "relies
solely on the pleadings and supporting affidavits, the plaintiff
need only make a *prima facie* showing of jurisdiction.  In
determining whether a plaintiff has met this burden, [the Court]
will not draw argumentative inferences in the plaintiff's favor"
but will "construe jurisdictional allegations liberally and take
as true uncontroverted factual allegations." Robinson v.
Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)
(internal citations and footnotes omitted); see also Mende, 269
F. Supp. 2d at 251.

    In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015).  When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (holding documents outside the record may become the basis for a dismissal if the document is "integral" to the complaint and there are no disputes regarding its authenticity or relevance); Springer, 2015 WL 9462083, at *1.

## II.

The following facts alleged in the Amended Complaint are accepted as true for the purposes of the defendant's motion to dismiss.

Mercator is a New York corporation and merchant bank headquartered in Manhattan and owned and operated by its founder and CEO, James H. Giffen, a New York resident.  Amended Compl. ¶¶ 2, 9.

Lars Windhorst, is the co-founder and Chairman of the Board of Sapinda Holding, a Dutch Company.  Amended Compl. ¶¶ 3, 10. Windhorst is a German citizen residing in London, and his office is located at the London office of one of Sapinda's subsidiaries, Sapinda UK Limited ("Sapinda UK"). Amended Compl. ¶ 11.  The plaintiff filed an original complaint naming Sapinda UK Limited, a British company headquartered in London, as a defendant.  Compl. ¶ 10.  Sapinda UK Limited was dropped as a named defendant from the Amended Complaint.[1]

On or about January 31 and February 1, 2014, Windhorst and Giffen met aboard Windhorst's yacht in waters off the Virgin Islands, after being introduced by a mutual acquaintance. Amended Compl. ¶¶ 4-5, 20.  The defendants were exploring investment opportunities across Europe, Africa, the Middle East,

---

[1] According to a declaration submitted by the defendants, Sapinda UK Limited is now in voluntary liquidation.  See Fox Decl. ¶¶ 2-3 & Ex. A.

and Asia, and Giffen came recommended as knowledgeable of and connected to opportunities in Kazakhstan.  Amended Compl. ¶¶ 3-4, 18.

The plaintiff alleges that during this meeting at sea, "the essential terms of a collaboration" were "negotiated and agreed upon" and Mr. Windhorst, on behalf of Sapinda, agreed to hire Mercator to "provide consulting and advisory services to Mr. Windhorst and Sapinda in connection with investment opportunities."  Amended Compl. ¶ 5.

After this meeting, Giffen sent an email to Windhorst suggesting they "open a Sapinda office in New York which could be a communication point for all of Sapinda Holding activities." Amended Compl. ¶ 23. He added that he "look[ed] forward to your [Windhorst's] summary of the agreements we reached today." Pincus Decl. Ex. 3; see also Amended Compl. 23.

On February 2, 2014, Windhorst sent an email response "on behalf of Sapinda," Amended Compl. ¶ 25, upon which the plaintiff bases its claims for breach of contract.  The email states:

> Dear Jim,
>      It was a privilege to meet you and I very much enjoyed the time together and our interesting discussion
>      I am happy to confirm our agreed arrangement with 700.000 USD fixed compensation for you, hiring you[r] current PA and establishing the NY office

You also have a 300.000USD budget to hire additional people and of course this can be adjusted if needed.

We will discuss [a] potential bonus each year and for the first time early 2015 after we have worked for this year together.

Our arrangement is supposed to be for the next 5 year[s]

I am very excited working with you and I look very much forward [to] seeing you in London soon to introduce you [to] my core team

We will discuss more details next week on the phone and start the process on everything

All the best

Lars

Lars Windhorst

Sapinda UK Limited

6th Floor

23 Savile Row

London W1S 2ET

Tel +44-207-6475847

Fax +44-207-6479879

Lars.windhorst@sapinda.com

Pincus Decl., Ex. 3; see also Amended Compl. ¶ 25.

The plaintiff contends that this email established a binding contract between Mercator and both Sapinda Holding and Windhorst individually.  See Amended Compl. ¶ 6.

The plaintiff alleges that "[t]he parties commenced performance under the Contract almost immediately."  Amended Compl. ¶ 28.  The plaintiff alleges that Windhorst sent Giffen emails related to potential investments in Kazakhstan and Ukraine, Amended Compl. ¶¶ 29-30, and that Giffen traveled to London for meetings with some of Windhorst's colleagues on February 27-28, 2014 and on May 20, 2014.  Amended Compl. 31, 33-34.

In May and June 2014, Giffen submitted to Sapinda UK Limited invoices, which were paid, for reimbursement of expenses for Giffen's travel to London.  The invoices referred to "the agreement reached between Mr. Lars Windhorst and Mr. J.H. Giffen on February 1, 2014 for Mr. Giffen to assist Mr. Windhorst in the strategic development of Sapinda UK Limited."  Pincus Decl. Exs. 6-7; Amended Compl. ¶ 36.

On May 22, 2014, Giffen emailed Windhorst to express disappointment "with the reaction of some of your colleagues with respect to our agreement to work together."  Pincus Decl. Ex. 4.  Giffen wrote that he respected Windhorst's "commitment to stand personally behind the agreement we made," and that he wanted to work with Windhorst "from both a personal and professional standpoint."  He added that he "will very shortly send you a draft document incorporating our agreement" and expressed a willingness to discuss and incorporate "any mutual[ly] acceptable concepts in the draft agreement."  Id.

On May 29, 2014, Giffen sent Windhorst another email.  He stated that he and Windhorst "reached agreement on February 1, 2014 that we would work together in the strategic development of Sapinda for a five year period."  Giffen wrote that he "accepted [Windhorst's] offer for our agreement to begin on March 1, 2014."  See Pincus Decl., Ex. 8; see also Amended Compl. ¶ 38.  Giffen added that, "[o]ver the last four months, I have done

everything in my power to begin executing our agreement" but was "prepared to consider your offer to terminate our agreement to work together" for "a one-time settlement payment of the net present value of only the five year compensation we had agreed upon for me and my staff." Pincus Decl. Ex. 8.

On June 23, 2014, the plaintiff sent a third invoice to Sapinda UK Limited for $250,000 for a "consultant fee" for the period March 1, 2014 to May 31, 2014. Pincus Dec. Ex. 7; see also Amended Compl. ¶ 39. The invoice referred only to Sapinda UK, not Sapinda Holding.

On April 16, 2015, the plaintiff filed the original complaint against Windhorst and Sapinda UK. The original complaint alleged that Windhorst and Sapinda UK hired Mercator to provide consulting and advisory services "to assist Mr. Windhorst in the strategic development of Sapinda UK Limited." Compl. ¶ 5. The plaintiff alleged the agreement was "memorialized" in Windhorst's February 2 email, which he sent on behalf of Sapinda UK with his Sapinda UK signature block. Compl. ¶¶ 22-23 (reproducing Windhorst's signature block in full). The original complaint also alleged that Giffen invoiced "Sapinda UK Limited" for Giffen's travels to London. Compl. ¶ 29.

On July 1, 2015, the plaintiff filed an Amended Complaint, which dropped Sapinda UK Limited and added Sapinda Holding B.V.

as a party.  The Amended Complaint also removed references to
Sapinda UK and replaced them with references to Sapinda Holding.
Compare, e.g., Compl. ¶ 5, with Amended Compl. ¶ 5; Compl. ¶ 23,
with Amended Compl. ¶ 26; Compl. ¶ 29, with Amended Compl. ¶ 36.
The Amended Complaint alleges a single claim for breach of
contract against Windhorst and Sapinda Holding.

In the Amended Complaint, the plaintiff alleges, without
reference to specific facts, that Sapinda Holding "throughout
its course of dealing with Mr. Giffen and Mercator, assumed the
role of a party to the Contract" and "manifested its intent to
be bound by the Contract."  Amended Compl. ¶ 44.  The plaintiff
further alleges that Windhorst was "centrally involved in the
negotiation, formation, management and breach of the
Contract, and in his course of dealing with Mr. Giffen and
Mercator, he manifested his intent to be individually bound by
the Contract."  Amended Compl. ¶ 45.

The plaintiff alleges a breach of contract for the
defendants' alleged failure "to pay the guaranteed fixed
compensation under the Contract and purporting to cancel
the Contract without cause."  Amended Compl. ¶¶ 47.  The
plaintiff seeks damages, costs, and fees.

The defendants move to dismiss the Amended Complaint on
three grounds: first, that the plaintiff failed to sue the
proper party; second, that any contract between the plaintiff

and the defendants would be barred by the statute of frauds; and third, that the Court lacks personal jurisdiction over the defendants.

### III.

### A.

The parties concede for the purposes of this motion that New York law applies.  "Under New York law, a breach of contract claim requires (1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach."  TransformaCon, Inc. v. Vista Equity Partners, Inc., No. 15cv3371 (SAS), 2015 WL 4461769, at *3 (S.D.N.Y. July 21, 2015) (internal quotation marks and footnote omitted).  "A breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal," and a "non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."  Id. (internal quotation marks and footnotes omitted); Crabtree v. Tristar Automotive Grp., Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.").

The defendants argue that the plaintiff has failed to sue the proper party.  The defendants contend that if any contract existed, it could only have been formed between Mercator and Sapinda UK Limited, *not* Sapinda Holding, which is the only named corporate defendant in the Amended Complaint and which the defendants contend is a non-signatory to the contract.

The plaintiff counters that there is a valid and enforceable contract and that Sapinda Holding is the real party in interest to the contract and Sapinda UK merely provided local services to the holding company, Sapinda Holding. The plaintiff also alleges that Windhorst was a party to the contract and "manifested his intent to be individually bound by the Contract."  Amended Compl. ¶ 45.

The plaintiff has failed to allege sufficient facts to support the existence of a contract between Mercator and Sapinda Holding or Windhorst.  With respect to the corporate defendant, the Amended Complaint and the documents upon which it relies to establish the contract---including the February 2 email and Giffen's travel invoices---show that the contract, if it existed, was between Mercator and Sapinda UK, not Sapinda Holding.  Windhorst signed the contract above a Sapinda UK signature block.  <u>See</u> Pincus Decl., Ex. 3; <u>see also</u> Amended Compl. ¶ 23; <u>cf.</u> Compl. ¶ 23 (reproducing full Sapinda UK signature block). The invoices were sent on behalf of Mercator

to Sapinda UK Limited and referenced Giffen's agreement "to assist Mr. Windhorst in the strategic development of *Sapinda UK Limited*." <u>See</u> Pincus Decl. Exs. 5 & 6 (emphasis added).

The plaintiff argues that Sapinda UK, as a subsidiary of Sapinda Holding, was simply the nominal counterparty to the alleged contract and that Sapinda Holding was the real party in interest. But "[g]enerally, 'a parent corporation and its subsidiary are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both.'" <u>S.M. v. Oxford Health Plans (N.Y.), Inc.</u>, 94 F. Supp. 3d 481, 498 (S.D.N.Y. 2015) (quoting <u>Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.</u>, 2 F.3d 24, 26 (2d Cir. 1993); <u>see also</u> <u>Celi v. Canadian Occidental Petroleum Ltd.</u>, 804 F. Supp. 465, 468 (E.D.N.Y. 1992) ("In New York, there is a 'presumption of separateness' to related corporations." (citation omitted)).

The plaintiff's allegation that Sapinda Holding "assumed the role of a party to the Contract," Amended Compl. ¶ 44, is merely conclusory, and "[c]onclusory allegations are insufficient to survive a motion to dismiss." <u>Banco Indus. de Venezuela, C.A. v. CDW Direct, LLC</u>, 888 F. Supp. 2d 508, 514-15 (S.D.N.Y. 2012) (citing <u>Iqbal</u>, 556 U.S. at 676).

With respect to defendant Windhorst, the plaintiff's own allegations undermine its claim that Windhorst was a party to

the contract.  See Amended Compl. ¶¶ 35, 45.  The plaintiff repeatedly alleges that Windhorst acted "on behalf of Sapinda" when hiring Giffen.  See Amended Compl. ¶¶ 22, 25-27.  Under New York law, a corporate officer who signs for a corporation is not personally bound by the contract, "'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'"  Lerner v. Amalgamated Clothing & Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (quoting Mencher v. Weiss, 114 N.E.2d 177, 179 (N.Y. 1953)); see also Veera v. Janssen, No. 05cv2145 (SHS), 2005 WL 1606054, at *4 (S.D.N.Y. July 5, 2005).

Giffen's own comment in a May 21 email that he "respect[ed] [Windhorst's] commitment to stand personally behind the agreement," Amended Compl. ¶ 35; Pincus Decl. Ex. 4, does not constitute clear and explicit evidence to establish individual liability.  Giffen cannot bootstrap his own self-serving comment into clear and explicit evidence that Windhorst accepted individual liability.  See Performance Comercial Importadora E Exportadora Ltda v. Sewa Int'l Fashions Pvt. Ltd., 915 N.Y.S.2d 44, 46 (App. Div. 2010) (holding, in light of the "clear and explicit evidence" standard, that "the parties' correspondence [was] insufficient to raise an issue of fact as to whether Star of India intended to superadd or substitute its own liability for, or to, that of Sewa"); see also Lerner, 938 F.2d at 5-6

13

(holding signature of corporation president on certificate of ratification of collective bargaining agreement did not bind president individually).

Accordingly, the breach of contract claim against Windhorst and Sapinda Holding is dismissed without prejudice for failure to state a claim.  See Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 216 (S.D.N.Y. 1997) (dismissing claim against non-signatory party despite allegation that party "transformed itself into an obliger under the [agreement] by playing an 'integral role'" in restructuring agreement's debt structure).

**B.**

The Amended Complaint should also be dismissed because the contract pleaded fails to satisfy the statute of frauds.

Under the New York Statute of Frauds, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: . . . By its terms is not to be performed within one year from the making thereof."  N.Y. Gen. Oblig. Law § 5-701(a)(1).  "To be considered a sufficient memorandum within the ambit of the Statute of Frauds, a writing 'must designate the parties, identify and describe the subject matter and state all the essential or material terms of the contract.'"  Allied Sheet Metal Works, Inc. v. Kerby Saunders,

<u>Inc.</u>, 619 N.Y.S.2d 260, 262 (App. Div. 1994) (quoting <u>Villano v.</u> <u>G & C Homes, Inc.</u>, 362 N.Y.S.2d 198, 200 (App. Div. 1974)).

As an initial matter, "[t]he affirmative defense of the Statute of Frauds is appropriately raised on a motion to dismiss." <u>Reives v. Lumpkin</u>, No. 08cv7797 (CM), 2012 WL 2045854, at *8 (S.D.N.Y. June 4, 2012) (citing <u>Rosbach v. Indus.</u> <u>Trading Co., Inc.</u>, 81 F. Supp. 2d 522, 524 (S.D.N.Y. 2000).

The Amended Complaint fails to allege that there was a writing that satisfies the statute of frauds.  The February 2 email fails to designate the parties to the contract---the email lists Windhorst's affiliation as Sapinda UK and not Sapinda Holding.  There is in fact no reference to Sapinda Holding in the email.  Furthermore, Windhorst's alleged commitment to "stand personally behind" the contract would constitute an oral guarantee that would be unenforceable under the Statute of Frauds, which provides that an agreement that is "a special promise to answer for the debt, default or miscarriage of another person" is void without a signed writing.  N.Y. Gen. Oblig. Law § 5-701; <u>see also</u> <u>Netto v. Rastegar</u>, No. 12cv4580 (CM), 2012 WL 4336167, at *9 (S.D.N.Y. Sept. 20, 2012).

The plaintiff contends that part performance of the contract should defeat a defense of the Statute of Frauds. However, where, as here, the plaintiff seeks only money damages without any specific prayer for equitable relief, the plaintiff

cannot rely on the doctrine of part performance to defeat a statute of frauds defense.  See MSL Prods., Inc. v. IMR Grp., LLC, 971 N.Y.S.2d 192, 196 (N.Y. Sup. Ct. 2013); see also Am. Tower Asset Sub, LLC v. Buffalo-Lake Erie Wireless Sys. Co., 961 N.Y.S.2d 667, 668 (App. Div. 2013) (memorandum).

Some courts have granted motions to dismiss with prejudice where the Statute of Frauds has clearly applied.  See, e.g., Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV, 754 F. Supp. 2d 610, 615-16 (S.D.N.Y. 2010); Zeising v. Kelly, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001); Belotz v. Jefferies & Co., No. 98cv2587 (LAP), 1999 WL 587916, at *2 (S.D.N.Y. Aug. 4, 1999), aff'd, 213 F.3d 625 (2d Cir. 2000).  However, the Court has afforded the plaintiff the opportunity to file another complaint, and the Court cannot determine at this point that the plaintiff could not allege a sufficient writing in the next complaint.  Therefore, the defendants' motion to dismiss the Amended Complaint is granted without prejudice to the filing of a Second Amended Complaint.  See, e.g., Zucker v. Katz, 708 F. Supp. 525, 531 (S.D.N.Y. 1989).

## C.

The defendants also argue that even if the Amended Complaint pleaded an actionable claim, it should be dismissed for lack of personal jurisdiction over the defendants.

District courts resolving issues of personal jurisdiction over out-of-state defendants in a diversity action engage in a two-part analysis.  First, the Court determines whether there is jurisdiction over the defendant under the applicable long-arm statute, here New York's C.P.L.R. § 302(a).  Second, the Court determines whether an exercise of jurisdiction under that statute is consistent with federal due process requirements. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (Sotomayor, J.) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).

Here, the only alleged basis for personal jurisdiction is the transaction of business in New York.  See N.Y. C.P.L.R. 302(a)(1) ("[A] court may exercise personal jurisdiction over any non-domiciliary [who] . . . transacts any business within the state or contracts anywhere to supply goods or services in the state").

The plaintiff contends, first, that the defendants entered into a contract with a New York corporation to provide consulting services, the defendants knew that the company was in New York and that they were contracting to have services performed in New York.  Second, part of the contract was to hire a "PA," or personal assistant, for Giffen to use in New York. While these contacts may be sufficient to give rise to personal jurisdiction, see, e.g., Fischbarg v. Doucet, 880 N.E.2d 22, 26

17

(N.Y. 2007), they turn on the existence of a contract for the plaintiff to perform services and hire an assistant.  Because the plaintiff has not sufficiently alleged a contract with these defendants, there is no personal jurisdiction over these defendants.  See Lana Mora, Inc. v. S.S. Woermann Ulanga, 672 F. Supp. 125, 127-28 (S.D.N.Y. 1987) ("Where there is no contractual relationship, there can be no personal jurisdiction under CPLR § 302(a)(1) based upon a defendant's having contracted to supply goods or services in New York.")

If the plaintiff files a Second Amended Complaint that properly alleges a contract, the Court will consider the issue of personal jurisdiction as it relates to such a complaint.

CONCLUSION

The defendants' motion to dismiss the Amended Complaint is **granted**, and the Amended Complaint is dismissed without prejudice.  The plaintiff may file a Second Amended Complaint within 30 days of the issuance of this opinion.  The Clerk is directed to close ECF Docket No. 17.

**SO ORDERED.**

Dated:     New York, New York
           February 10, 2016          _____/s/_____
                                          John G. Koeltl
                                      United States District Judge

18