```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------

THE MERCATOR CORPORATION,                    15-cv-2970 (JGK)

               Plaintiff,            MEMORANDUM OPINION AND
                                             ORDER
   - against -

SAPINDA HOLDING B.V.,
               Defendant.

--------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiff, the Mercator Corporation ("Mercator"), sued Lars Windhorst and Sapinda Holding B.V. ("Sapinda Holding") for breach of contract. This Court dismissed the First Amended Complaint ("Amended Complaint") without prejudice with leave to replead. Mercator filed a Second Amended Complaint ("SAC") against Sapinda Holding alone. Sapinda Holding moves to dismiss the SAC on the grounds that Mercator failed to sue the proper party, that the claim is barred by the statute of frauds, and that the Court lacks personal jurisdiction over the defendant. For the reasons explained below, the Second Amended Complaint is dismissed.

I.

    The defendant moves to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim upon which

1

relief can be granted). The plaintiff conducted discovery with respect to personal jurisdiction but the parties did not seek an evidentiary hearing.

On a motion to dismiss for lack of personal jurisdiction, "'the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.'" Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999)). Following discovery but prior to an evidentiary hearing, "the plaintiff's *prima facie* showing, necessary to defeat" a motion to dismiss for lack of jurisdiction, "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant" and "must be factually supported." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the

plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (holding documents outside the record may become the basis for a dismissal if the document is "integral" to the complaint and there are no disputes regarding its authenticity or relevance); Springer, 2015 WL 9462083, at *1.

**II.**

The SAC alleges that Sapinda Holding breached a contract between Sapinda Holding and Mercator. The following factual allegations are taken from the SAC and are accepted as true for purposes of this motion to dismiss.

Mercator is a New York corporation and merchant bank headquartered in Manhattan and owned and operated by its founder and CEO, James H. Giffen, a New York resident. (SAC ¶¶ 2, 3.) Lars Windhorst is the co-founder and Chairman of the Board of Sapinda Holding, a Dutch Company. (SAC ¶ 8.) Windhorst also served as a director of Sapinda UK Limited ("Sapinda UK"), a subsidiary of Sapinda Holding, which allegedly served as an entity providing services to the holding company, Sapinda Holding. (SAC ¶¶ 9-10.) Sapinda Holding and Sapinda UK shared an office in London, where Windhorst maintained his principal office. (SAC ¶ 10.)

On January 31, 2014, Windhorst and Giffen met aboard Windhorst's yacht in waters off the Virgin Islands, after being introduced by a mutual acquaintance who recommended Giffen as knowledgeable of and connected to opportunities in Kazakhstan. (SAC ¶¶ 26, 28.) Sapinda Holding was allegedly looking to expand its global reach and to establish an office in New York, and sought to hire Mercator for that purpose, as well as to assist

Sapinda Holding with potential investment opportunities. (SAC ¶ 25.)

The plaintiff alleges that during this meeting at sea, "the essential terms and subject matter" of a collaboration were "negotiated and agreed upon." (SAC ¶ 29.) After this meeting, Giffen sent an email (the "Giffen Email") to Windhorst suggesting they "open a Sapinda office in New York which could be a communication point for all of Sapinda Holding activities." (SAC ¶ 35.) He added that he "look[ed] forward to your [Windhorst's] summary of the agreements we reached today."  (SAC ¶ 35; Pincus Decl. Ex. 11, ECF No. 51-11.)

On February 2, 2014, Windhorst sent an email response ("Windhorst Email"). (SAC ¶ 37.) The email states:

> Dear Jim,
>
> It was a privilege to meet you and I very much enjoyed the time together and our interesting discussion
>
> I am happy to confirm our agreed arrangement with 700.000 USD fixed compensation for you, hiring you[r] current PA and establishing the NY office
>
> You also have a 300.000USD budget to hire additional people and of course this can be adjusted if needed.
>
> We will discuss [a] potential bonus each year and for the first time early 2015 after we have worked for this year together
>
> Our arrangement is supposed to be for the next 5 year[s]
>
> I am very excited working with you and I look very much forward [to] seeing you in London soon to introduce you [to] my core team

5

> We will discuss more details early next week on the phone and start the process on everything
>
> All the best
>
> Lars
>
> <u>Lars Windhorst</u>
> <u>Sapinda UK Limited</u>
> 6th Floor
> 23 Savile Row
> London W1S 2ET
> Tel +44-207-6475847
> Fax +44-207-6479879
> Lars.windhorst@sapinda.com

(Pincus Decl. Ex. 11, ECF No. 51-11.; <u>see also</u> SAC ¶ 37.)(emphasis added.)

The "core team" referred to in the email allegedly consisted of executives and key personnel from Sapinda Holding. (SAC ¶ 38.) This email, as well as several other emails from Windhorst to Giffen, were allegedly sent from Windhorst's Sapinda Holding business email address. (SAC ¶ 38.) These emails included a Sapinda Holding Confidentiality Disclaimer: "The information contained in this communication from lars.windhorst@sapinda.com . . . is confidential . . . Sapinda Holding BV, its subsidiaries or any affiliated company, may have an interest, position, or effect transaction, in any investment mentioned herein." (Pincus Decl. Ex. 11, ECF No. 51-11; <u>see also</u> SAC ¶ 33.)

6

On February 26, 2014, Windhorst sent an e-mail ("Sapinda Internal Email") to Sapinda Holding executives S.K. Kim and Edwin Eichler. (Pincus Decl. Ex. 12, ECF No. 51-12.) The email states:

> [Giffen] is a high profile U.S. deal maker . . . . I have a hand shake deal with him to work together and I want you to get to know him better so that we can potentially agree details with him . . . . He can help in all emerging markets for Oil, Agri, mining, etc . . . . [He] wants to commit to 5 years full time and hard work and is flying over from New York only for the meeting with us. I want [] Tim and Jacob to also meet him.

(Id.; see also SAC ¶ 39.) The email is signed by "Lars Windhorst[,] Sapinda UK Limited." (Pincus Decl. Ex. 12, ECF No. 51-12.) The plaintiff contends that the Giffen Email, Windhorst Email, and Sapinda Internal Email, taken together, memorialized the material terms of a contract between Mercator and Sapinda Holding. (SAC ¶ 45.)[1] The plaintiff also contends that the Windhorst Email and the Sapinda Internal Email represent an admission by Sapinda Holding as to the existence and essential terms of the contract. (Id.)

---

[1] While the Complaint plainly alleges that there was an enforceable contract between Sapinda Holding and Mercator, at oral argument on the motion, plaintiff's counsel stated that the contract was between Sapinda UK and Mercator, and that Sapinda Holding subsequently assumed that contract. Both descriptions lack merit. As explained below, the documents indicate that any alleged contract was with Sapinda UK, not Sapinda Holding. The factual allegations also do not support the contention that Sapinda Holding assumed the alleged contract between Mercator and Sapinda UK.

7

In February and March, 2014, Windhorst sent Giffen emails related to business opportunities in Kazakhstan and Ukraine. (SAC ¶¶ 48-49.) These business opportunities were explored allegedly for the benefit of Sapinda Holding. (SAC ¶ 46.) Giffen traveled to London for meetings with some of Windhorst's Sapinda Holding colleagues on February 27-28, 2014 and on May 20, 2014. (SAC ¶¶ 50, 56.)

In May and June 2014, Giffen submitted to Sapinda UK invoices, which were paid, for reimbursement of expenses for Giffen's travel to London. The invoices referred to "the agreement reached between Mr. Lars Windhorst and Mr. J.H. Giffen on February 1, 2014 for Mr. Giffen to assist Mr. Windhorst in the strategic development of Sapinda UK Limited." (Pincus Decl. Exs. 14-15, ECF Nos. 51-14, 51-15; SAC ¶ 59.)(emphasis added.) The decision to pay those invoices through Sapinda UK was allegedly made by Windhorst's personal assistant at Sapinda Holding. (SAC ¶ 61.)

On May 20, 2014, Giffen met with Windhorst and Kim, and was allegedly informed by Windhorst that some of Windhorst's colleagues at Sapinda Holding did not wish to work with Mercator. (SAC ¶¶ 56-57.) Giffen emailed Windhorst on May 21, 2014 to express disappointment "with the reaction of some of your colleagues with respect to our agreement to work together." (SAC ¶ 58.) On May 29, 2014, Giffen sent Windhorst another

8

email. He stated that he and Windhorst "reached agreement on February 1, 2014 that we would work together in the strategic development of Sapinda for a five year period." Giffen wrote that he "accepted [Windhorst's] offer for our agreement to begin on March 1, 2014." (See Pincus Decl. Ex. 13, ECF No. 51-13; see also SAC ¶ 63.) Giffen added that "[o]ver the last four months, I have done everything in my power to begin executing our agreement" but was "prepared to consider your offer to terminate our agreement to work together" for "a one-time settlement payment of the net present value of only the five year compensation we had agreed upon for me and my staff." (Pincus Decl. Ex. 13, ECF No. 51-13.)

On June 23, 2014, the plaintiff sent a third invoice to Sapinda UK for $250,000 for a "consultant fee" for the period March 1, 2014 to May 31, 2014. (Pincus Dec. Ex. 16, ECF No. 51-16; see also SAC ¶ 65.) The invoice again referred only to the "strategic development of Sapinda UK Limited," not Sapinda Holding. On the same day, Windhorst forwarded this invoice to Sapinda Holding executive Kim, who responded: "We should not pay this! I feel disgusted!" (SAC ¶ 66.) The invoice has not been paid, and Mercator alleges that Sapinda Holding has purported to renounce and terminate the alleged contract. (SAC ¶ 67.)

On April 16, 2015, the plaintiff filed the original complaint against Windhorst and Sapinda UK. The original

complaint alleged that Windhorst and Sapinda UK hired Mercator to provide consulting and advisory services "to assist Mr. Windhorst in the strategic development of Sapinda UK Limited." (Compl. ¶ 5.) The plaintiff alleged the agreement was "memorialized" in Windhorst's February 2 email, which he sent on behalf of Sapinda UK with his Sapinda UK signature block. (Compl. ¶¶ 22-23.) The original complaint also alleged that Giffen invoiced "Sapinda UK Limited" for Giffen's travels to London. (Compl. ¶ 29.)

Defense counsel advised at argument on the current motion that Sapinda UK went into liquidation in December 2014. On July 1, 2015, the plaintiff filed an Amended Complaint, which dropped Sapinda UK and added Sapinda Holding as a party. The Amended Complaint also removed references to Sapinda UK and replaced them with references to Sapinda Holding, or simply deleted references to Sapinda UK. (Compare, e.g., Compl. ¶ 5, with Amended Compl. ¶ 5; Compl. ¶ 23, with Amended Compl. ¶ 26; Compl. ¶ 29, with Amended Compl. ¶ 36.) The Amended Complaint alleged a single claim for breach of contract against Windhorst and Sapinda Holding.

The defendants moved to dismiss the Amended Complaint. The Court, by opinion and order dated February 10, 2016, granted the defendants' motion and dismissed the Amended Complaint without prejudice and with leave for the plaintiff to replead. See The

10

Mercator Corp. v. Windhorst, 159 F. Supp. 3d 463 (S.D.N.Y. 2016). The Court found that the breach of contract claim against Windhorst and Sapinda Holding should be dismissed because the plaintiff had not alleged a plausible claim of a contract between Mercator and those parties. Id. at 470-71. The Court also found that the Amended Complaint should be dismissed because the contract pleaded failed to satisfy the statute of frauds. Id. at 471-72. Finally, in the absence of a viable contract, the Court found that the plaintiff had failed to allege a basis for personal jurisdiction over the defendants. Id. at 472.

The plaintiff filed the SAC on March 11, 2016. The SAC alleges a single claim for breach of contract against Sapinda Holding for "failing to pay the guaranteed fixed compensation under the Contract and [for] purporting to cancel the Contract without cause." (SAC ¶ 77.) Mercator seeks damages, costs, and fees. The defendant now moves to dismiss the SAC, again arguing first, that Mercator failed to sue the proper party; second, that any alleged contract is barred by the statute of frauds; and third, that the Court lacks personal jurisdiction over the defendant.

**III.**

**A.**

The parties concede for the purposes of this motion that New York law applies.

The SAC must be dismissed because Sapinda Holding is not a party to the purported contract. "Under New York law, a breach of contract claim requires (1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach." TransformaCon, Inc. v. Vista Equity Partners, Inc., No. 15-cv-3371 (SAS), 2015 WL 4461769, at *3 (S.D.N.Y. July 21, 2015) (quotation marks omitted). "A breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal," and a "non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Id. (footnotes and quotation marks omitted); see also Crabtree v. Tristar Auto. Grp., Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.").

The Court dismissed the Amended Complaint by its February 10 Opinion and Order, reasoning that despite the plaintiff's contention that Sapinda Holding is the real party in interest to

12

the alleged contract and that Sapinda UK merely provided local services to the holding company, the Amended Complaint failed to include any non-conclusory allegations to support such an inference. The SAC makes the same contention, and includes as support for this proposition an argumentative analysis of the text of the same emails relied upon in the Amended Complaint and additional internal emails of Sapinda Holding.

However, the plaintiff has still failed to allege a plausible claim of a contract with Sapinda Holding. The documents signed by Windhorst – including the only email that was not already referenced in the Amended Complaint – are plainly signed on behalf of Sapinda UK, not Sapinda Holding. (See Pincus Decl. Exs. 11-12, ECF Nos. 51-11, 51-12.) Moreover, the invoices sent on behalf of Mercator were directed to Sapinda UK and referenced Giffen's agreement "to assist Mr. Windhorst in the strategic development of Sapinda UK Limited." (Pincus Decl. Exs. 14-15, ECF Nos. 51-14, 51-15).

As discussed above, the fact that Windhorst's emails included a disclaimer referencing Sapinda Holding does not make the communications binding on Sapinda Holding or its subsidiaries, and thus does not raise a reasonable inference that Sapinda Holding had "assumed or been assigned the contract." Crabtree, 776 F. Supp. at 166. And the fact that Sapinda Holding may have benefitted from work to be performed by

13

Mercator under the purported contract is irrelevant to the question whether it assumed the contract's obligations. See Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1256 n.3 (S.D.N.Y. 1995) ("The status of an intended third-party beneficiary gives that person the right to sue; it does not give others the right to sue that person on the contract."). Although the SAC alleges that certain employees of Sapinda Holding were involved in discussing the purported contract, it does not allege that the purported contract was actually assumed by or assigned to Sapinda Holding, and none of the conduct alleged "manifests an intent to be bound by the contract." Bouveng v. NYG Capital LLC, No. 14-cv-5474 (PGG), 2015 WL 3503947, at *17 (S.D.N.Y. June 2, 2015) (quotation marks omitted).[2] Finally, the plaintiff alleges that Windhorst signed as agent for Sapinda Holding, but that allegation is a legal conclusion unsupported by any factual allegations. Indeed, Windhorst's signature block plainly establishes that he signed on behalf of Sapinda UK. Moreover, as the plaintiff recognized in its original complaint and conceded at argument on the current motion, the purported contract was originally alleged to

---

[2] By comparison, the complaint at issue in TransformaCon alleged that the parent company "was intimately involved in" the negotiation of the contract at issue and that it "participated in the negotiation and controlled the subsidiary during the contract negotiations for its own benefit." 2015 WL 4461769, at *5. The SAC, meanwhile, alleges that the contract had already been formed by the time Windhorst discussed it with Sapinda Holding executives. (See SAC ¶¶ 35-39.)

have been between the plaintiff and Sapinda UK. There are no plausible factual allegations that such a contract was thereafter assumed by Sapinda Holding.

**B.**

The SAC must be also dismissed because the contract pleaded fails to satisfy the statute of frauds. Under the New York Statute of Frauds, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: . . . By its terms is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. Law § 5-701(a)(1). "To be considered a sufficient memorandum within the ambit of the Statute of Frauds, a writing 'must designate the parties, identify and describe the subject matter and state all the essential or material terms of the contract.'" Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc., 619 N.Y.S.2d 260, 262 (App. Div. 1994) (quoting Villano v. G & C Homes, Inc., 362 N.Y.S.2d 198, 200 (App. Div. 1974)).

The Court explained in its February 10 Opinion and Order that the Amended Complaint failed to allege that there was a writing that satisfies the statute of frauds because the emails the Amended Complaint relied upon failed to designate the parties to the contract. Mercator, 159 F. Supp. 3d at 471-72.

The SAC relies on the same set of emails, with the addition of the Sapinda Internal Email. There is no explicit reference to Sapinda Holding as a party to the purported contract in any of these emails. Nor is there any reference to Mercator as the counterparty. Giffen sent his emails through "ttwwnn@aol.com," and Windhorst acknowledged only a "hand shake deal" with Giffen personally. (See Pincus Decl. Exs. 11, 12, ECF Nos. 51-11, 51-12.) Accordingly, the writings relied upon in the SAC to establish a purported contract still fail to identify the parties to the purported contract, and therefore cannot satisfy the statute of frauds.

Moreover, all the emails signed by Windhorst were signed using a Sapinda UK signature block. (See Pincus Decl. Exs. 11, 12, ECF Nos. 51-11, 51-12.) Not a single email was signed on behalf of Sapinda Holding, whom the plaintiff seeks to charge, and which the SAC alleges was the contracting party. That the emails contained a disclaimer which stated that "Sapinda Holding BV, its subsidiaries or any affiliated company, may have an interest" in any investment mentioned in the emails does not, as the plaintiff seems to contend, transform a signature on behalf of Sapinda UK into one on behalf of Sapinda Holding. (Pincus Decl. Ex. 11, ECF. No. 51-11.) The plain language of the signature block refutes any suggestion that Windhorst signed on behalf of Sapinda Holding. Because the purported contract was

16

not signed by the party the plaintiff seeks to charge, it does not satisfy the statute of frauds, and the plaintiff's contract claim is dismissed.

The Court has already afforded the plaintiff one opportunity to replead. The SAC, which was filed after some discovery, fails to cure the deficiencies in the Amended Complaint. Because there is no reason to believe that the plaintiff can further amend the complaint to cure the deficiency, the SAC is dismissed with prejudice. See, e.g., Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV, 754 F. Supp. 2d 610, 615-16 (S.D.N.Y. 2010) (granting motion to dismiss with prejudice where claim was clearly barred by statute of frauds); Zeising v. Kelly, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001) (same).

### c.

The SAC must also be dismissed for lack of personal jurisdiction. District courts resolving issues of personal jurisdiction over out-of-state defendants in a diversity action engage in a two-part analysis. First, the Court determines whether there is jurisdiction over the defendant under the applicable long-arm statute, here, New York's C.P.L.R. § 302(a). Second, if the statute is satisfied, the Court must determine whether an exercise of jurisdiction under that statute is consistent with federal due process requirements. Bank Brussels

Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (Sotomayor, J.).

The only alleged basis for personal jurisdiction is the transaction of business in New York. See N.Y. C.P.L.R. 302(a)(1)("[A] court may exercise personal jurisdiction over any non-domiciliary [who] . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."). The plaintiff argues that the defendant entered into a contract with a New York corporation to perform work in New York – including anticipated hiring of staff in New York – and thus purposefully availed itself of the laws of New York. But, as the Court found with respect to the Amended Complaint, there is no personal jurisdiction over the defendant because the plaintiff has not provided a sufficient factual basis to conclude that Sapinda Holding entered into the alleged contract. See Lana Mora, Inc. v. S.S. Woermann Ulanga, 672 F. Supp. 125, 127-28 (S.D.N.Y. 1987) ("Where there is no contractual relationship, there can be no personal jurisdiction under CPLR § 302(a)(1) based upon a defendant's having contracted to supply goods or services in New York.").

## CONCLUSION

The defendant's motion to dismiss the Amended Complaint is **granted**, and the Amended Complaint is dismissed with prejudice. The Clerk is directed to enter judgment dismissing the Second

18

Amended Complaint and closing the case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:**    **New York, New York**
              **November 10, 2016**     _/s/_____
                                                   **John G. Koeltl**
                                      **United States District Judge**